UNITED STATES of America,

v.

**Mark LIPPOLD, Defendant.**

**No. S1 99 CR 1110 RWS.**

United States District Court,
S.D. New York.

May 1, 2001.

Cheryl Krause, Assistant United States Attorney, Mary Jo White, United States Attorney, New York City, for plaintiff.

Robert M. Tudisco, Marino, Tudisco & Scharf, Bronx, NY, Robert Tudisco, Marino, Tudisco & Scharf, LLP, White Plains, NY, for defendant.

## MEMORANDUM OPINION

SWEET, District Judge.

Defendant Mark Lippold ("Lippold") appeals the decision to remand him pending sentencing. The government opposes the motion. For the reasons set forth below, the motion will be denied.

### Background

On April 12, 2001, a jury convicted Lippold of participating in a conspiracy to distribute and possess with intention to distribute cocaine in violation of 21 U.S.C. §§ 841 and 846. After hearing additional arguments on the quantity of narcotics involved the next morning, the jury returned a second verdict reflecting its determination that Lippold knew, or that it was reasonably foreseeable for him to have known, that the conspiracy involved at least 500 grams but less than five kilograms of cocaine. Pursuant to the jury's finding, Lippold faces a statutory sentencing range of five to forty years in prison, see 21 U.S.C. § 841(b)(1)(B)(ii)(II), subject to the Court's determination of the appropriate range applicable under the United States Sentencing Guidelines (the "Guidelines").[1]

The government moved to remand Lippold pending sentencing pursuant to 18 U.S.C. § 3143(a)(2) once the guilty verdict was rendered.[2] Section 3143(a)(2) pro-

---

**1.** There is some uncertainty as to the Court's appropriate role in determining the quantity of narcotics for sentencing purposes pursuant to the Guidelines in light of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000), that "any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." On November 17, 2000, the Second Circuit heard argument in *United States v. Guevara*, No. 00–1133, on the question "whether a criminal defendant may be sentenced above the maximum of the applicable Guidelines range but below the statutory maximum provided in § 841(b)(1)(C) based on a finding of drug quantity that has been made by a judge

rather than by a jury." *United States v. Williams*, No. 00–1519, 2001 WL 391985, *5 & n. 5 (2d Cir. April 18, 2001) (table). In addition, the Second Circuit will hear reargument en banc in *United States v. Thomas*, No. 98–1051, on June 27, 2001, in order to determine whether a judge may determine the amount of narcotics in a drug conspiracy after *Apprendi*. *See* Mark Hamblett, *Full Second Circuit to Decide Who Sets Amount of Drugs*, N.Y. Law Journal, April 26, 2001, at 1, 2.

**2.** At that time, before the jury had determined the quantity of cocaine involved in the conspiracy in which Lippold participated, the applicable statutory sentencing range was

vides that a trial court "shall order" a defendant if found guilty of a narcotics offense with a statutory maximum sentence of ten years or more, *see* 18 U.S.C. § 3142(f)(1)(C), unless (A)(i) "there is a substantial likelihood that a motion for acquittal or new trial will be granted ..." and (B) there is "clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community." 18 U.S.C. § 3143(a)(2).

Defense counsel argued that there was a substantial likelihood that Lippold would prevail on a motion for directed verdict of acquittal or new trial based upon the government's allegedly discriminatory use of peremptory challenges during voir dire, *see Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and that Lippold was not a flight risk despite the lengthy prison term he faced, as evidenced by the numerous family and friends who attended the trial in his support.

Although Lippold poses no risk of flight or danger to the community, the Court held that the *Batson* issue was not strong enough to provide a "substantial likelihood" of success on a motion for acquittal or a new trial. As a result, Lippold was remanded pursuant to § 3143(a)(2). Leave was granted to renew the bail application after the proceedings were completed.

On April 26, 2001, counsel for Lippold moved to appeal the denial of bail pending sentencing. Oral argument was heard on April 30, 2001 whereupon the motion was deemed fully submitted.

*Discussion*

Trial courts have the discretion to release a defendant who is subject to detention pursuant to § 3143(a)(2) if the following two factors are met:

(1) the defendant meets the conditions of release set forth in § 3143(a)(1)— namely that there is clear and convincing evidence that he does not pose a risk of either flight or danger to the community if released; and

(2) "it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate."

18 U.S.C. § 3145(c); *see U.S. v. DiSomma,* 951 F.2d 494, 496 (2d Cir.1991) (reviewing trial court's analysis of § 3145(c)); *United States v. Carr,* 947 F.2d 1239, 1240 (5th Cir.1991) (per curiam) (holding that the " 'exceptional reasons' language of § 3145 may be applied by the judicial officer initially ordering such mandatory detention, despite its inclusion in a section generally covering appeals."). Motions filed pursuant to § 3145(c) "shall be determined promptly." 18 U.S.C. § 3145(c).

 As the Court has already determined that Lippold poses no risk of flight or danger to the community, the only remaining question is whether there are "exceptional reasons" to order his release.[3]

---

from zero to twenty years. 21 U.S.C. § 841(b)(1)(C).

**3.** Defense counsel again argues that the *Batson* issue is substantially likely to prevail on appeal. However, this question is not properly before the Court. First, whether an appeal is likely to be successful is relevant to the determination of remand pending appeal, not sentencing. *Compare* 18 U.S.C. § 3143(a) (standard for bail pending sentencing) *with* 18 U.S.C. § 3143(b) (standard for bail pend-

ing appeal); *United States v. McAllister,* 974 F.2d 291, 292 (2d Cir.1992) (holding that § 3143(a) applies only to the district judge's own actions, not the likelihood of success on appeal). Second, even construing the application as renewing the argument that Lippold is likely to succeed on a motion for acquittal or new trial, although this factor was relevant to the initial determination pursuant to § 3143(a)(2)(A)(i), it is not relevant to the appeal of that decision pursuant to § 3145(c). *See, e.g.,* 105 F.3d 555, 556 (10th Cir.1997)

Lippold has presented two arguments in support of his renewed claim that exceptional reasons exist warranting his release pending sentencing. First, he is the father of three young children whom he supports financially, and his seven-month old son, Daniel, was recently diagnosed with Bell's Palsy. Daniel's pediatrician, Dr. Joan Budd, M.D., has submitted a letter noting that such condition is "unusual" in a child of Daniel's youth, but is otherwise "uncomplicated." (Kedia Letter Ex. A.) In addition, Lippold's employer at Print International, Chief Financial Officer Joseph Fortuna, has submitted a letter requesting that Lippold be released in order to train his replacement, who will handle "all nightly responsibilities including all Graphic Arts functions" for the company. (Kedia Letter Ex. B.) [4]

Section 3145(c) does not define what constitutes "exceptional reasons" warranting release pending sentencing, but the Second Circuit has construed the phrase as a "unique combination of circumstances giving rise to situations that are out of the ordinary." *DiSomma*, 951 F.2d 494, 497 (2d Cir.1991).

■ Although this somewhat amorphous standard invites a case-by-case evaluation, some general rules have nonetheless evolved in the case law. For example, circumstances that are "purely personal" do not typically rise to the level of "exceptional" warranting release pending sentencing pursuant to § 3145(c). *See, e.g., United States v. Luciano*, 108 F.3d 1370,

1997 WL 120567, *2 & n. 1 (2d Cir. Feb. 24, 1997) (table) (noting that district courts have rejected "purely personal circumstances" as not sufficiently exceptional reasons to release defendants pursuant to § 3145(c) and citing cases). As one district court succinctly noted,

> Although the Court obviously sympathizes with Defendant's personal family situation, incarceration regrettably inflicts family hardship on many, if not most, defendants who appear before this Court. Rather than personal family hardships being 'out of the ordinary,' 'uncommon' or 'rare' with defendants convicted of similar drug trafficking crimes, personal family hardships are very common and occur in a great number of cases before this court.

*United States v. Burnett*, 76 F.Supp.2d 846, 849 (E.D.Tenn.1999) (citing cases). *But see United States v. Scott*, No. 1:95–CR–80–1, 1995 WL 723752 (E.D.Tex. Nov.22, 1995) (need to assist an infirm parent, including contributions from employment, and purely personal considerations such as disruption of the family); *United States v. Mahabir*, 858 F.Supp. 504 (D.Md.1994) (disruption of family arising out of incarceration); *United States v. Taliaferro*, 779 F.Supp. 836 (E.D.Va.1992) (defendant's daughter's difficult pregnancy).

■ However, in combination with other factors, family circumstances may warrant release pending sentencing pursuant to § 3145(c). *See United States v. Charger*,

---

("Under § 3143(a)(1), [the defendant] ... did not have to show, however, as he would have under § 3143(a)(2), that he was likely to prevail on a motion for acquittal or new trial....").

4. In addition, Lippold contends that his minimal role in the conspiracy and potential nine-year sentence under a worst-case Guidelines computation, as well as a potential downward departure for extraordinary post-offense reha-

bilitation given his work and church involvement since the offense conduct also weigh in favor of release pending sentencing. However, he is nonetheless facing a mandatory minimum sentence of five years pursuant to 21 U.S.C. § 841(b)(1)(B)(i)(II), and these factors do not materially distinguish him from any other defendants convicted of narcotics crimes.

918 F.Supp. 301 (D.S.D.1996) (granting release due to positive family influence on alcoholic defendant and likely granting of downward departure in familial assault case on Indian reservation); *United States v. Perez,* No.Crim. 3:97CR48(AHN), 1998 WL 386484 (D. Conn. June 10, 1998) (learning disability, mental condition, potential custody issues of children and employment record warranted presentence release); *United States v. Loaiza–DeVilla,* No. 94 Cr. 73(CSH), 1996 WL 132121 (S.D.N.Y. March 22, 1996) (an error that might reduce a sentence, but not eliminate it, together with family circumstances, warranted release); *United States v. Ameneiro,* No. 94 CR 333–12, 1996 WL 66100 (N.D.Ill. Feb.8, 1996) (employment up until the point of incarceration, failure to flee while on bond, ties to the community and length of the sentence); *United States v. Douglas,* 824 F.Supp. 98 (N.D.Tex.1993) (defendant pled and cooperated and might be subjected to retaliation if incarcerated); *United States v. Bloomer,* 791 F.Supp. 100, 102 (D.Vt.1992) (relationship to family, aid to unrelated family, medical condition, and employment); *United States v. Stein,* CR. No. 90–158–FR, 1992 WL 176407 (D.Or. July 15, 1992) (employment and a place to stay while on release, full cooperation with pretrial services before trial, strong family ties and no risk of danger).

■ The reasons set forth by Lippold do not rise to the level of exceptional circumstances so as to justify releasing him pending sentencing. Although the need to follow Congress's mandate regrettably results in separating him from his family and work, such is the case with every defendant facing a custodial sentence. As the *Burnett* court noted, if such hardships were determined to be "exceptional," then

> inevitably defendants committing the same offenses would be treated disparately for reasons unrelated to their crimes or personal character. A drug trafficker with no family would immediately go to jail while a drug trafficker convicted of the same offense with a family would remain on bail.

76 F.Supp.2d at 850. Such an inequitable result surely does not advance either Congress's goals as evidenced by the statutory language of § 3145(c), or the more fundamental ends of our criminal justice system.

### Conclusion

For the foregoing reasons, the motion challenging the order to detain Lippold pending sentencing pursuant to 18 U.S.C. § 3145(c) is denied.

It is so ordered.