**UNITED STATES of America,**

v.

**Edward HARTERY, Defendant.**

**No. 03–CR–092 (LEK).**

United States District Court,
N.D. New York.

Jan. 6, 2005.

Ronald L. Kuby, Office of Ronald L. Kuby, New York, NY, for Defendant.

David M. Grable, AUSA, Office of United States Attorney, Albany, NY, for Plaintiff.

### *MEMORANDUM–DECISION AND ORDER* [1]

KAHN, District Judge.

## I. Discussion

On December 30, 2004, the Second Circuit issued an Order to this Court requesting the Court's reasons for denying Defendant Edward Hartery's ("Hartery") request for release pending the appeal of this Court's February 10, 2004 Order. For the following reasons, the Court has determined that Hartery's request for release pending his appeal should have been granted, and his surrender date extended accordingly.

**1.** For printed publication in the Federal Reporter.

■ Release pending appeal is governed by the Bail Reform Act, 18 U.S.C. § 3143. Section 3143(b)(2) mandates that a person found guilty of a "crime of violence" be detained pending appeal. The Second Circuit has determined that for detention purposes, violations of § 922(g)(1) are crimes of violence. *United States v. Dillard*, 214 F.3d 88 (2d Cir.2000). However, a defendant convicted of such a crime may still be released pending appeal if the defendant meets the criteria set forth in § 3143(b)(1) and § 3145(c). Section 3143(b)(1) requires that a court find "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released . . ." and, in relevant part, "that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—(1) reversal . . . ." If these two requirements are met, a court may release the defendant "if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." 18 U.S.C. § 3145(c).

### A. Likelihood of flight or danger to any person or the community

■ First, there is clear and convincing evidence that Hartery is not likely to flee or pose a danger to any person or the community. The weapons possessed by Hartery were used for hunting purposes, and were otherwise kept in a safe. Hartery did not possess these weapons for the commission of any activities that would be illegal, violent or non-violent. His possession was illegal only by his status as a prior convicted felon. Although Hartery has two prior convictions for violent crimes (Assault Second Degree and Robbery Third Degree), these crimes were committed over ten years ago. Therefore, it is unlikely that Hartery would be a danger to

anyone. Furthermore, Hartery has been released for nearly two years and, to the Court's knowledge, he has adhered to every condition that has been imposed upon him by Pre–Trial Services. Finally, Hartery has a fiancé and an eight year old daughter living in the area. Considering all of these circumstances, it is highly unlikely that Hartery would flee.

## B. Hartery's appeal

Second, before the Court may allow Hartery to be released pending his appeal, § 3143 contains a second requirement, namely, the Court must determine that "the appeal is not for the purposes of delay and raises a substantial question of law or fact likely to result in-(i) reversal . . . ." 18 U.S.C. § 3143(b)(1)(B).

### 1. Basis of the February 10 decision

■ In the present case, Hartery appeals this Court's February 10, 2004 decision which denied his request to suppress evidence, including firearms and ammunition, that was seized in the search of his home, pursuant to a warrant for the same. (Dkt. No. 30). In moving to suppress the evidence, Hartery contended that there was no probable cause to issue the warrant.[2]

#### a. Reliability of the confidential informant

Hartery claimed that the judge who issued the search warrant determined that the confidential informant ("CI") mentioned in ATF Agent Kessler's affidavit was reliable based on Agent Kessler's "naked conclusion" that stated simply that the CI had provided "reliable information related to criminal activity on multiple occasions over the past three years." (Dkt. No. 30) at 5. Although such statements

were not greatly detailed, the Court held that the CI's reliability was assessed by the magistrate judge in other ways. First, the tip came to officials from a CI, rather than an anonymous tipster, and a CI whose identity is known to officials can be held responsible if his information is later realized to be fabricated. *Id.* at 6. The CI also had personal knowledge because he had been to the Hartery home. *Id.* It was also significant that Agent Kessler's affidavit provided a basis for independent corroboration; a taxidermist had informed officials that Hartery had brought in a bear to be stuffed in the fall of 2001 which Hartery said he had shot himself. *Id.* Finally, the CI had stated that Hartery's garage had been transformed into a heated living area. *Id.* at 2. Although it was not a living area, the garage was, in fact, heated. *Id.* The Court concluded that this information was sufficient corroboration for the CI's statements, thus bolstering his reliability.

#### b. Hartery's possession of firearms

Hartery contended that the affidavit did not indicate that the CI provided facts to demonstrate that Hartery even knew of or owned the firearms in his residence. *Id.* at 7. The Court held that probable cause existed for the conclusion that Hartery possessed firearms because, although the CI did not state that the firearms he had seen in the Hartery residence actually belonged to Hartery, the CI had spoken to an "unnamed individual" who had been in the Hartery home in the past few weeks and saw that there were rifles and ammunition that belonged to Hartery. *Id.* Although this information came to officials from an "unnamed individual" and through the CI, the Court held that it could be

**2.** Although the Court briefly restates the basis of the February 10 decision here, familiarity

with the detailed opinion is presumed. *See* February 10, 2004 decision (Dkt. No. 30).

considered under the totality of the circumstances and could help establish probable cause. *Id.* at 8. Again, the taxidermist's statements provide corroboration for the fact that the firearms were Hartery's, and the CI's credibility can also be used to support the statements of the unnamed individual. *Id.* at 8–9.

### c. The information was not stale

Hartery contended that the evidence was "stale" because the CI had seen the firearms in Hartery's home several months prior to the issuance of the warrant and the corroborating statements were made to the taxidermist more than one year ago. *Id.* at 9. However, the Court held that the information supplied to the issuing judge was not stale, even without considering the unnamed individual's statement that he had seen the firearms in the past few weeks. *Id.* at 10. The warrant was issued on February 28, 2003. *Id.* The taxidermist spoke with Hartery in the fall of 2001, and in the summer of 2002, the CI saw multiple rifles in Defendant's home. *Id.* As the Court explained, "[t]his evidence, which was adduced over time, allows an inference that the illegal conduct was continuing and, therefore, the affidavit was not stale at the time of its issuance." *Id.*

### 2. Possibility of reversal of the February 10 decision

As discussed in the February 10 decision and summarized above, the Court concluded that, giving the required deference to the magistrate judge's decision to issue the warrant, the evidence established probable cause to issue the search warrant because:

Probable cause to obtain a search warrant exists if the evidence submitted indicates a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).... "Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams,* 407 U.S. 143, 149, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

*Id.* at 4.

The points made by defendant may have merit when considered individually. However, those points cannot be considered in isolation because the Court must consider the evidence under the "totality of the circumstances." Under the totality of the circumstances, the Court concluded that probable cause existed to issue the warrant. But, under the evidence adduced, including use of the statements of the unnamed individual, courts may disagree as to whether the search warrant was issued based upon probable cause. This case presents "a 'close' question or one that very well could be decided the other way." *United States v. Randell,* 761 F.2d 122, 124 (2d Cir.1985) (quoting *United States v. Giancola,* 754 F.2d 898, 901 (11th Cir. 1985)). Because the Court recognizes that there may be judicial disagreement, the second requirement of § 3143 is met.[3]

### C. Existence of exceptional reasons

█ Because the two criteria of § 3143(b)(1) are satisfied, the Court must then determine whether "exceptional reasons" exist that make the detention of

---

**3.** Hartery's omnibus motion put forth additional reasons to suppress evidence and seek hearings, all of which were considered in the February 10 decision. However, because a review of the probable cause analysis may provide a reason for reversal, the Court need not now consider whether there are other points that may provide a basis for reversal of that decision.

Hartery pending appeal inappropriate. The Second Circuit has recognized that "[n]either the statute nor case law defines the circumstances which may qualify as exceptional reasons permitting release." *United States v. DiSomma*, 951 F.2d 494, 497 (2d Cir.1991). That Court noted in *DiSomma* that "a merely substantial question [of law or fact] may be sufficient, in the presence of one or more remarkable and uncommon factors, to support a finding of exceptional circumstances." *Id.* There are such factors present in this case. In many, if not most, instances, a felon in possession of a firearm likely has used or intends to use such firearm for an unlawful purpose. However, Hartery's situation is unique because his possession of firearms was for the sport of hunting, which standing alone is not an illegal purpose. His possession of firearms is made illegal only because he had two prior felony convictions entered more than ten years ago. Furthermore, as stated above, there exists a substantial legal question on appeal. Even though the legal question on appeal does not go to the precise issue that would make the crime a crime of violence as was the question in *DiSomma*, the Second Circuit noted that "a case by case evaluation is essential, and it is not [the Court's] intention to foreclose district judges from the full exercise of discretion in these matters." *Id.* The Court, therefore, finds that the substantial question on appeal and the "remarkable and uncommon factors" present in this case are exceptional reasons that should permit Hartery's release pending appeal.

## II. Conclusion

Because Hartery satisfies the three requirements set forth in § 1343(b)(1) and § 3145(c), the Court has determined that Hartery's request to be released pending appeal should have been granted, and that his surrender date should be extended accordingly.

Based on the foregoing discussion, it is hereby

ORDERED, that Hartery's motion for release pending appeal is **GRANTED**; and it is further

ORDERED, that the Clerk serve a copy of this order on the Second Circuit Court of Appeals; and it is further

ORDERED, that the Clerk serve a copy of this order on all parties.